**Anthony BROWN, Petitioner,**

v.

**Harold McKINNEY, Superintendent, Mt. McGregor Correctional Facility, Respondent.**

**No. 03CV3103NGASC.**

United States District Court, E.D. New York.

Feb. 28, 2005.

Anthoney Brown, Pro Se (Wilton, NY), for plaintiff.

Richard A. Brown, Queens County District, Attorney, By: John M. Castellano and Jennifer, Hagan (Kew Gardens, NY), for defendant.

## OPINION AND ORDER

GERSHON, District Judge.

*Pro se* petitioner Anthony Brown applies to this court for a writ of habeas corpus

under 28 U.S.C. § 2254, alleging that he is being held in custody in violation of the Constitution and laws of the United States pursuant to the judgment of a court of the State of New York. For the reasons set forth below, petitioner's application is denied.

## PROCEDURAL HISTORY

On the evening of June 8, 1991, Yvonne Williams was shot and killed while standing on the corner of 101st Street and Northern Boulevard in Queens County, New York. In connection with this crime, petitioner was convicted of one count of manslaughter in the second degree, N.Y. Penal Law § 125.15, and one count of criminal possession of a weapon in the second degree, N.Y. Penal Law § 265.03, following a jury trial in New York Supreme Court, Queens County (Demakos, J.). Petitioner was sentenced on September 1, 1999 to concurrent prison terms of five to fifteen years for each offense.

On direct appeal to the Appellate Division, Second Department, petitioner's appellate counsel raised two claims: (1) the State's peremptory challenge of a black juror was racially motivated; and (2) petitioner's right to due process was violated by the trial court's improper questioning of petitioner during his testimony. In addition, petitioner filed a *pro se* supplemental brief raising the following claims: (1) petitioner's right to compulsory process was violated by the court's failure to grant funding to obtain defense witnesses from Jamaica; (2) petitioner's right to compulsory process was violated by the State's failure to call certain witnesses at the suppression hearing and at trial; and (3) the State failed to turn over certain material required by *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

By decision dated June 10, 2002, the Appellate Division affirmed petitioner's conviction, holding that petitioner's claim concerning the peremptory challenge "was not asserted before the trial court and therefore is not preserved for appellate review," and that petitioner's remaining claims "are either unpreserved for appellate review or without merit." *People v. Brown*, 295 A.D.2d 442, 743 N.Y.S.2d 554 (2d Dept. 2002). Petitioner's subsequent application for leave to appeal to the New York Court of Appeals was denied on September 18, 2002, *People v. Brown*, 98 N.Y.2d 729, 749 N.Y.S.2d 479, 779 N.E.2d 190 (2002), and his application for reconsideration was denied on January 23, 2003, *People v. Brown*, 99 N.Y.2d 580, 755 N.Y.S.2d 716, 785 N.E.2d 738 (2003).

Petitioner also moved to vacate his conviction, pursuant to New York Criminal Procedure Law § 440.10, on the following grounds: (1) the prosecutor engaged in misconduct by knowingly presenting perjured testimony to the grand jury and at trial; (2) the trial court constructively amended the indictment; and (3) the trial court charged the jury improperly. By decision dated November 21, 2002, the New York Supreme Court, Queens County (Rosenzweig, J.) denied petitioner's motion, holding that petitioner was statutorily barred from seeking collateral review because sufficient facts appeared on the record for petitioner to have raised his claims on direct appeal. *People v. Brown*, No. 96–2273, slip op. at 3 (Sup.Ct., Queens County Nov. 13, 2002). Leave to appeal to the Appellate Division was denied.

Subsequently, petitioner applied to the Appellate Division for a writ of error *coram nobis*, alleging ineffective assistance of appellate counsel. The Appellate Division denied that application, holding that petitioner "failed to establish that he was denied the effective assistance of appellate

counsel." *People v. Brown,* 307 A.D.2d 933, 762 N.Y.S.2d 891 (2d Dept.2003). Leave to appeal to the Court of Appeals was denied. *People v. Brown,* 2 N.Y.3d 796, 781 N.Y.S.2d 295, 814 N.E.2d 467 (2004).

In this petition for a writ of habeas corpus, filed on June 17, 2003, as amended, petitioner raises the following six claims: (1) the State's peremptory challenge of a black juror was racially motivated; (2) petitioner's right to compulsory process was violated by the State's failure to call certain witnesses at trial; (3) the State failed to turn over certain *Rosario* and *Brady* material; (4) the prosecutor engaged in misconduct by knowingly presenting perjured testimony to the grand jury and at trial; (5) petitioner's right to due process was violated when the trial court (a) improperly questioned petitioner during his testimony, (b) constructively amended the indictment, and (c) improperly charged the jury; and (6) petitioner was denied the effective assistance of appellate counsel.

## FACTS

In 1993, Everton DeSouza, an acquaintance of petitioner and one-time confidential government informant, contacted the New York Police Department ("NYPD") to say that he had been an eyewitness to the shooting that resulted in the death of Yvonne Williams. He identified petitioner as being one of the shooters.

In 1994, petitioner was arrested in Jamaica for a passport violation. While he was in custody, Jamaican officials received an anonymous tip that petitioner was wanted for questioning in the United States in connection with a murder investigation. Deputy Superintendent Anthony Hewitt, a Jamaican constable, interviewed petitioner. During the interview, petitioner allegedly confessed to participating in the shootout that caused the death of Williams, but refused to sign a written statement. Superintendent Hewitt notified the NYPD of petitioner's confession.

After learning of petitioner's whereabouts in Jamaica, the Queens County District Attorney's Office initiated an extradition proceeding. DeSouza executed an affidavit in support of the government's extradition request. He did so anonymously, using the name John Doe, out of concern for his safety and the safety of his family. Affidavit of John Doe dated June 30, 1994 ("Doe Aff.") ¶ 3; *see also* Tr. of Pretrial Hearing dated October 28, 1996 at 73. However, he appeared before Justice Nicholas A. Pitaro of the New York Supreme Court *in camera* to confirm his identity. *Id.* Justice Pitaro notarized DeSouza's affidavit and affixed it with the court's official seal. *Id.* Petitioner was subsequently extradited to the United States. He was charged with two counts of murder in the second degree (one count embodying a theory of intentional murder and the other count embodying a theory of depraved indifference murder), two counts of criminal possession of a weapon in the second degree, and two counts of criminal possession of a weapon in the third degree.

At trial, the prosecution presented six witnesses. DeSouza testified to being an eyewitness to the shooting. He said that, on the night of the shooting, several men, including petitioner, were gathered near the intersection of 101st Street and Northern Boulevard. One of the men accused petitioner of stealing cocaine from an associate, and an argument ensued. As the argument escalated, petitioner and two other men drew guns and shots were fired. DeSouza testified that he did not see who fired the first shot. Williams, a bystander who had accompanied one of the men to the scene, was shot in the back. Superintendent Hewitt testified about his inter-

view of petitioner, including the details of petitioner's confession. A medical examiner testified about the autopsy performed on the victim, and three NYPD officers testified about their respective roles in the investigation. In addition, the parties stipulated to the testimony of a member of the NYPD ballistics lab concerning the calibers of various shell casings and bullets recovered from the crime scene and the victim's body.

Petitioner testified on his own behalf. He admitted to being present at the scene of the crime, but not to drawing a gun or firing shots. He claimed that Superintendent Hewitt fabricated his confession under pressure from the NYPD. Petitioner did not present any additional witnesses. The prosecution recalled Superintendent Hewitt in rebuttal. He testified that he had not spoken with any members of the NYPD prior to his interview of petitioner and that he did not fabricate any part of petitioner's confession.

Prior to submission of the case to the jury, the court dismissed the intentional murder count and submitted one count of depraved indifference murder in the second degree and the lesser included offense of manslaughter in the second degree, as well as the weapons counts. The jury found petitioner guilty of manslaughter in the second degree and one count of criminal possession of a weapon in the second degree. He was acquitted of the other charges.

## DISCUSSION

### I. Standard of Review

Since this petition for a writ of habeas corpus was filed after April 24, 1996, it is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214 (1996). AEDPA mandates deference to state court decisions by federal courts conducting habeas corpus review. Under its provisions, an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in the state court unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The habeas court must presume that the state court's determination of factual issues is correct unless the petitioner demonstrates otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that a state court decision is "contrary to" clearly established Supreme Court precedent if it "contradicts the governing law set forth in [Supreme Court] cases or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The Court has further held that a state court decision is "an unreasonable application of" clearly established Supreme Court precedent if, from an objective standpoint, the state court applied Supreme Court precedent unreasonably, not simply incorrectly or erroneously. *Id.* at 411, 120 S.Ct. 1495. The Court of Appeals for the Second Circuit has clarified this standard, holding that "[although] some increment of incorrectness beyond error is required ... the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off

the mark as to suggest judicial incompetence." *Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir.2001) (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)).

 A state court need not analyze each individual claim or cite federal law to trigger the deferential AEDPA standard of review, so long as it disposes of the claim on the merits and issues a judgment. *Ryan v. Miller,* 303 F.3d 231, 245–46 (2d Cir.2002). A blanket statement by the Appellate Division that a defendant's contentions "are either unpreserved for appellate review or without merit," like the one made in this case, is sufficient to trigger deferential treatment under AEDPA. *Id.* ("There is no reason ... to doubt that AEDPA applies in this situation because the only alternative to finding the claim adjudicated on the merits would be finding the claim procedurally barred .... Moreover, in our jurisprudence regarding exhaustion of remedies in the habeas context, we have confronted this same disjunctive language and held that when a state court employs such language, 'the validity of the claim is preserved and is subject to federal review.' ").

## II. Procedural Default

 A petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). To satisfy this exhaustion requirement, a habeas corpus petitioner must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). A habeas corpus petitioner who has defaulted his or her federal claims in state court, either by failing to preserve a claim for state appellate review or by failing to present the claim to the appropriate state forum within the time period prescribed by state law, meets the technical requirements for exhaustion because state remedies are no longer "available" to the petitioner. Under those circumstances, however, the independent and adequate state ground doctrine bars federal habeas corpus review. *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The doctrine provides that a federal court may not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. The independent and adequate state law ground may be either substantive or procedural. *Id.* at 729, 111 S.Ct. 2546.

In the habeas context, application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. *Id.* at 730–31, 111 S.Ct. 2546. Without the rule, a federal district court would be able to do in habeas what the Supreme Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of federal jurisdiction and a means to undermine the State's interest in enforcing its laws. *Id.*

 Notwithstanding the independent and adequate state ground doctrine, however, a federal court may consider claims raised in a habeas corpus petition that were defaulted in state court if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims would result in a fundamental miscarriage

of justice, *i.e.*, that petitioner is actually innocent. *Id.* at 750, 111 S.Ct. 2546.

■ Several of the claims raised in the petition before this court were defaulted in state court. In ruling on petitioner's direct appeal, the Appellate Division expressly held that petitioner's claim concerning the State's peremptory challenge of a black juror was not preserved for appellate review because petitioner failed to raise it before the trial court. *Brown*, 295 A.D.2d at 442, 743 N.Y.S.2d 554. Similarly, in ruling on petitioner's motion to vacate his conviction, the New York Supreme Court expressly held that petitioner's claims concerning prosecutorial misconduct, constructive amendment of the indictment, and the jury charge were barred from collateral review by statute because sufficient facts appeared on the record for petitioner to have raised them on direct appeal. *Brown*, No. 96–2273, slip op. at 3. Since petitioner has not demonstrated cause and prejudice, nor actual innocence, this court is precluded from reaching the merits of those claims by the adequate and independent state ground doctrine.

## III. Compulsory Process Claim

■ The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. *Wade v. Mantello*, 333 F.3d 51, 57 (2d Cir.2003). *See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense."). Petitioner claims that his right to compulsory process was violated by the State's failure to call certain witnesses at trial. Specifically, petitioner alleges that

the prosecution failed to call Dr. Montas, the medical examiner who performed the autopsy on the victim's body, as well as Sergeant Legrottaglie and Detective D'Amico, two police officers who investigated the crime scene.

■ The Compulsory Process Clause does not impose an obligation on the prosecution to call witnesses who are favorable to the defense. It is up to the accused and the accused's counsel to present defense witnesses, if they so choose. Should a witness for the defense refuse to appear voluntarily, the accused may have a right to the issuance of a subpoena. But petitioner has not alleged, nor is there anything in the record to suggest, that petitioner sought to have a defense witness subpoenaed and that the court declined to do so. (In fact, at the court's direction, Sergeant Legrottaglie was made available specifically for defense counsel to interview. Trial Tr. at 482–83.) Instead, petitioner complains that the prosecution failed to call to the stand certain witnesses whose testimony may have been favorable to petitioner. This failure cannot be construed as a violation of petitioner's right to compulsory process. Accordingly, the Appellate Division's denial of this claim was not contrary to, nor an unreasonable application of, Supreme Court precedent. With respect to this claim, petitioner's application for a writ of habeas corpus is denied.

## IV. *Brady/Rosario* Claim

■ Petitioner alleges that the prosecution's failure to disclose two pieces of evidence constituted *Rosario* and *Brady* violations. The first piece of evidence is the recording of an anonymous 911 call concerning the shooting. At trial, a police officer testified that she responded to the scene of the crime after receiving a "radio run," based on the 911 call, that a woman had been shot at the intersection of 101st

Street and Northern Boulevard. On direct examination by the prosecutor, the officer gave the following testimony regarding the 911 call:

Q And at that time, did something happen?

A We had a radio run.

Q Now, just for the purpose of explaining, could you explain what exactly a radio run is?

A That would be a telephone call that was placed to the—through the 911 system, which we would call communication and they would transmit it to us out in the field.

Q Based on that radio run, did you respond somewhere?

A Respond to the radio run came over as-

Q You can't say what it came over as-

A Respond to 101 and Northern.

Trial Tr. at 370-71. On cross-examination by defense counsel, the officer gave additional testimony regarding the 911 call:

Q [W]hat time did you receive the radio run?

A 10:48.

Q That would be roughly 12 minutes before 11?

A Yes.

Q What was the radio run you received?

A The radio run came over as 1010, female shot.

Q So you had received a radio run that somebody had been shot; is that correct?

A Yes.

Q And this radio run originated as a 911 call, I think you said?

A Yes, it was.

Q And are those 911 calls recorded?

A Yes, they are.

Q And that would indicate that somebody had called 911 to indicate that a woman had been shot; is that correct?

A Yes.

Q Did you ever obtain the tape of the 911 call?

A No, I did not.

Trial Tr. at 389-90. Petitioner was not provided with a recording of the 911 call, nor with a transcript, and those items are not part of the record before this court.

Petitioner also alleges that the prosecution failed to disclose a transcript of DeSouza's *in camera* interview with Justice Pitaro in connection with petitioner's extradition proceedings. A copy of the affidavit that DeSouza swore in Justice Pitaro's presence was provided to petitioner.

In *People v. Rosario*, 9 N.Y.2d 286, 289-90, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), the New York Court of Appeals held that a prosecutor must disclose to the accused any prior statement made by a prosecution witness that relates to the subject matter of the witness's testimony, unless the statement contains information that the necessities of effective law enforcement require be kept confidential. This rule of law was subsequently codified at N.Y.Crim. Proc. L. § 240.44(1). The *Rosario* rule derives from principles of state common law, and is not required by the U.S. Constitution. As a result, it does not present a basis for habeas corpus relief. *Green v. Artuz*, 990 F.Supp. 267, 274 (S.D.N.Y.1998); *Senor v. Greiner*, 2002 WL 31102612 (E.D.N.Y.2002). Accordingly, the court will consider the prosecution's alleged failure to disclose the two pieces of evidence only in the context of *Brady*.

 Under *Brady v. Maryland*, 373 U.S. 83, 86-88, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, suppression, by the prosecution, of evidence that is material either to guilt or to punish-

ment is a violation of due process. Accordingly, the prosecution has a constitutional duty to disclose such evidence to the accused. A violation of this duty has three components: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). The standard for prejudice is whether the evidentiary suppression "undermines our confidence" that the factfinder would have reached the same result. *Id.* at 300–01, 119 S.Ct. 1936. Thus, the scope of the prosecution's duty ultimately is defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the accused's trial or plea proceedings. *United States v. Coppa,* 267 F.3d 132, 140 (2d Cir.2001).

 With respect to the claim that the prosecution failed to disclose a transcript of De Souza's *in camera* interview with Justice Pitaro, there is no basis for believing that a transcript was ever made of that interview. The purpose of the interview was to confirm that there was, in fact, an informant and that he had a basis for maintaining his anonymity. As for the substance of his statement, it was provided to petitioner in the form of the affidavit that DeSouza executed before Justice Pitaro. With respect to the 911 tape, although there was a tape initially, there is no basis for believing that the tape remained in existence for more than a limited period. *See, e.g., Hagen v. Ross,* 2002 WL 1285128 (E.D.N.Y.2002) (indicating that tapes of 911 calls are subject to routine destruction after three months).

 The failure of law enforcement officers to preserve evidence, the exculpatory value of which is unknown, does not violate *Brady,* nor the Due Process Clause generally, absent a showing that the officers acted in bad faith. *Arizona v. Youngblood,* 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). This is true even if the defendant made a specific request for production of the evidence prior to its destruction. *Illinois v. Fisher,* 540 U.S. 544, 548, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004) (per curiam). Here, petitioner has failed to show that law enforcement officials destroyed either the 911 tape or the putative transcript of DeSouza's interview in bad faith. Most importantly, petitioner has failed to demonstrate that any prejudice ensued from the prosecution's failure to provide him with these items. *See Strickler,* 527 U.S. at 300–01, 119 S.Ct. 1936.

Accordingly, there is no basis for the court to conclude that the decision of the Appellate Division was contrary to, or an unreasonable application of, *Brady* and its progeny. With respect to this claim, petitioner's application for a writ of habeas corpus is denied.

## V. Improper Questioning of Petitioner by the Trial Court

 Petitioner argues that he was deprived of a fair trial when the trial court questioned him extensively during his testimony, *inter alia,* about the details of his confession and his use of aliases. A federal habeas court does not review a state trial judge's behavior under the same standard that a federal appellate court would employ on direct review of a federal trial judge's behavior. This is because "federal courts have authority under their supervisory powers to oversee the administration of criminal justice within federal courts and lack such authority with respect to

state courts. The only commands that federal courts can enforce in state courts are those of the Constitution." *Daye v. Attorney General,* 712 F.2d 1566, 1571 (2d Cir.1983). Thus, to prevail on a claim of judicial misconduct, petitioner must show that the state trial judge's conduct was so fundamentally unfair as to deprive him of his constitutional right to due process. *Gayle v. Scully,* 779 F.2d 802, 806 (2d Cir.1985); *Robinson v. Ricks,* 2004 WL 1638171 (E.D.N.Y.2004). A judge does not deny a defendant due process of law merely by intervening in a trial to question witnesses. *Id.* It is well within the power of the trial judge to question witnesses, including the defendant. Such questioning most often occurs to test the memory of witnesses, to avoid confusion on the part of jurors, and to clarify points that are deliberately obfuscated or are simply confusing. *Gayle,* 779 F.2d at 813. The judge's intervention in the conduct of a trial must be both significant and adverse to the defense to a substantial degree before the risk of impaired functioning of the jury, or lack of the appearance of a neutral judge conducting a fair trial, exceeds constitutional limits. *Id.* at 806; *Robinson,* 2004 WL 1638171, at *13.

Upon review of the record of petitioner's trial, I conclude that the conduct of the trial judge did not impinge petitioner's constitutional right to a fair trial. Many of the judge's questions to the petitioner were clearly for clarification purposes only. The petitioner often answered questions with long, discursive answers; the judge attempted to clarify these answers, but did not prevent the petitioner from telling his version of what occurred. Some of the judge's other questions, particularly those, during cross-examination, relating to the petitioner's confession, were more probing than would be expected from a neutral magistrate, and may have suggested the judge's disbelief of the petitioner's claims

regarding the confession. However, neither in quantity nor significance did the judge's questions approach the level of problematic judicial questioning that has been upheld in this Circuit. Moreover, the judge gave the following charge to the jury:

> I wish to advise you also at this time that you are not to consider anything I have said during the trial or any questions I have asked nor anything that I may say to you in the course of this charge as any indication that I have any opinion on the facts of this case one way or another. I have no power to tell you what the facts are or to tell you that one fact is more important than another fact or what witness is truthful or what witness is untruthful. These are all matters within your own and exclusive power as judges of the facts.

Trial Tr. at 789. Accordingly, with respect to this claim, petitioner's application for a writ of habeas corpus is denied.

## VI. Ineffective Assistance of Appellate Counsel

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on the defendant's first appeal as of right. *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Claims of ineffective assistance of counsel are analyzed under the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel is judged ineffective when: (1) counsel's performance falls below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687–694, 104 S.Ct. 2052.

Here, petitioner alleges that his appellate counsel was ineffective for three reasons: First, counsel failed to raise the issue of ineffective assistance of trial counsel on direct appeal. Second, counsel gave petitioner misleading advice in connection with a claim he proposed to raise on direct appeal concerning prosecutorial misconduct. Third, counsel failed to raise a valid question of law in her application for leave to appeal to the New York Court of Appeals.

 As an initial matter, petitioner argues that the decision of the Appellate Division, denying his application for a writ of error *coram nobis,* is contrary to clearly established Supreme Court precedent because it cites *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and not *Strickland.* But the State court need not cite *Strickland* to meet the AEDPA standard; it need only render a decision that is not contrary to, or an unreasonable application of, *Strickland. See Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir.2001). Moreover, *Jones,* which holds that appellate counsel is not constitutionally obliged to advance every nonfrivolous argument that could be made in a case, 463 U.S. at 751–54, 103 S.Ct. 3308, is a relevant precedent that may properly factor into a court's analysis under *Strickland. See Aparicio,* 269 F.3d at 94 n. 7, 95.

### a. Failure to Raise Ineffective Assistance of Trial Counsel Claim

Petitioner argues that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel, based on trial counsel's failure to prevent the trial court's improper questioning of petitioner. But, as discussed above, the conduct of the trial court was not improper. The proposed ineffective assistance of trial counsel claim is, therefore, baseless, and appellate counsel's decision to forgo it did not fall below an objective standard of reasonableness based on prevailing professional norms.

### b. Advice Concerning Prosecutorial Misconduct Claim

 Petitioner argues that appellate counsel gave him misleading advice about the claim for prosecutorial misconduct that he sought to raise on appeal. Based on minor inconsistencies between DeSouza's grand jury testimony and his trial testimony, chiefly the length of time DeSouza spent at the scene prior to the shooting and the names of other individuals who were present at the scene, petitioner wanted to argue that the prosecutor knowingly presented perjured testimony to the grand jury and at trial. In a letter to petitioner dated February 28, 2001, appellate counsel gave the following analysis of the proposed claim:

> This brings me to the next claim regarding DeSouza's testimony in the grand jury. To the extent that DeSouza's testimony differed at trial from the grand jury, · this helped the defense at trial. Indeed, your attorney was able to cast doubt on his credibility regarding his testimony that you had a gun. Moreover, with respect to a claim regarding the prosecutor's alleged use of perjured testimony, this is an off-the-record claim. Also, it would be very hard to prove that the prosecutor *knew* the grand jury testimony was false, even if it was false. Furthermore, there are many other reasons why a witness may give inconsistent testimony on some details, such as mistake or failure in memory. So, for all of these reasons, I cannot raise this type of claim in the brief.

Aff. in Support of Motion for Writ of Error *Coram Nobis,* Ex. B. Petitioner alleges that, as a result of counsel's analysis spe-

cifically her statement that the proposed claim is an off-the-record claim-he omitted the claim from his supplemental brief on direct appeal, and raised it, instead, in his collateral motion to vacate his conviction. But in deciding that motion, the New York Supreme Court held that the "genesis" of the claim concerning DeSouza's testimony appeared on the record, and, having failed to raise it on direct appeal, petitioner was statutorily barred from raising it on the collateral motion. *Brown,* No. 96–2273, slip op. at 3.

This court finds appellate counsel's analysis of the proposed prosecutorial misconduct claim to be sound, and consistent with an objective standard of reasonableness based on prevailing professional norms. In any event, petitioner suffered no prejudice as a result of defaulting this claim because, for the reasons set forth by appellate counsel, the claim had no reasonable probability of success. In fact, before holding that the claim was statutorily barred, the Supreme Court noted that "other than his own self-serving allegations, the defendant submits no other documents in support of his contention." *Id.*

### c. Application for Leave to Appeal to the Court of Appeals

 Petitioner also argues that appellate counsel was ineffective for failing to present a valid question of law in petitioner's application for leave to appeal the denial of his direct appeal to the New York Court of Appeals. But appellate counsel submitted a detailed leave application arguing both that petitioner's claim concerning the State's peremptory challenge of a black juror was preserved for appellate review, and that it presented the court "with the following novel leave-worthy issue: has a pretext for discrimination been established where the proponent of a *Batson* challenge informs the Court and opposing counsel that the proffered race-neutral reason for a peremptory challenge is factually incorrect and where, in response, no independent explanation is supplied to justify the challenge to the juror." The leave application also made reference to petitioner's claim on direct appeal that the trial court improperly questioned petitioner during his testimony. That the Court of Appeals concluded, in its certificate denying leave, that "there is no question of law presented which ought to be reviewed by the Court of Appeals," does not signify that the leave application was deficient. Petitioner is not entitled to be heard by the Court of Appeals as of right. It is the prerogative of that court to grant or deny leave based on its own jurisprudential considerations. This court finds that the leave application prepared by appellate counsel did not fall below an objective standard of reasonableness based on prevailing professional norms.

In light of the foregoing discussion, this court finds that the decision of the Appellate Division denying petitioner's application for a writ of error *coram nobis* was neither contrary to, nor an unreasonable application of, *Strickland.* Accordingly, with respect to petitioner's claim of ineffective assistance of appellate counsel, the petition for a writ of habeas corpus is denied.

### CONCLUSION

For the reasons set forth above, petitioner's application for a writ of habeas corpus is denied in its entirety. Since petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied pursuant to 28 U.S.C. § 2253(c).

**SO ORDERED.**